[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: MOTION TO STRIKE #111
On January 31, 1996, the plaintiff, Richard Watt, filed a four count revised complaint against the defendants, the Ford Consumer Finance Co., Inc. (Ford), and The Associates Payroll Management Services Co. (Payroll). On February 26, 1996, the defendants filed a motion to strike the third and fourth counts, which set forth a cause of action for intentional infliction of emotional distress and the violation of Connecticut's Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a, et seq., respectively.
 I.
The allegations of the third and fourth counts of Watt's revised complaint state and imply, and would permit proof of, the following facts, which the court must take as true for the purpose of ruling on the defendants' motion to strike. Zeller v.Consolini, 235 Conn. 417, 419, ___ A.2d ___ (1995). Watt was employed as a lending agent by Ford, who was managed by Payroll. In March 1994, Watt notified Rosemary Ronnow, who at all relevant times was acting as an employee of Ford, that a third Ford employee was committing an illegal loan practicing act, namely, falsifying a loan application of a previously unsuccessful loan applicant. Ronnow failed to take any action against the alleged unethical employee and instead directed Watt to "mind his own business." Watt, however, disregarded Ronnow's instruction and informed Ronnow's superiors about his suspicions regarding the unethical employee.
The third and fourth counts allege that, sometime thereafter, Watt began processing a loan for two Ford customers. The customers negotiated a reduced interest rate with Watt's CT Page 5204-T supervisor, Scott Howell, who submitted the customers' loan pre-approval form to Ronnow for her approval. Ronnow agreed to the negotiated reduced interest rate and indicated so on the loan pre-approval form. The customers' loan file was then returned to Watt so that he could complete the preparation of the customers' final loan approval form. In so doing, Watt photocopied the approval information that Ronnow recorded on the loan pre-approval form.
Watt then submitted the loan approval form to Ford's underwriting department. On or about April 13, 1994, Ford terminated Watt's employment alleging that he falsified the loan approval form and forged Ronnow's signature. Watt, however, alleges that his termination was in retaliation for his decision to report the illegal conduct of the aforementioned unethical Ford employee to Ronnow's superiors. Watt further alleges that such a retaliatory discharge is in violation of Connecticut public policy which encourages the reporting of potential criminal conduct to the appropriate authorities.
After his termination, Watt began to look for other employment opportunities. On several occasions, potential employers contacted Ronnow or other Ford employees for information concerning Watt's job performance. In response to these inquiries, Ronnow allegedly made several false, fraudulent, and unprivileged defamatory statements about Watt's integrity.
Based upon these facts, in the third count of the revised complaint, Watt alleges that the defendants' conduct was extreme and outrageous. Watt further alleges that the defendants knew or should have known that their conduct would cause Watt severe emotional distress. Finally, Watt alleges that the defendants' conduct did in fact cause Watt severe emotional distress.
In the fourth count, Watt alleges that the defendants were engaged in the business of trade or commerce. Watt further alleges that the defendants' conduct, which occurred during the course of its business activities, was extreme, outrageous, and in violation of public policy. Watt therefore alleges that the defendants' conduct constitutes unfair trade practices in violation of CUTPA.
 II.
A. Count Three — Intentional Infliction of Emotional Distress
CT Page 5204-U
There are four elements in a cause of action for the intentional infliction of emotional distress: "(1) that the actor intended to inflict emotional distress; or that he knew or should have known that emotional distress was a likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe." (Internal quotation marks omitted.)DeLaurentis v. New Haven, 220 Conn. 225, 266-67, 597 A.2d 807
(1991), citing 1 Restatement (Second), Torts § 46; Drew v.K-Mart Corp., 37 Conn. App. 239, 251, ___ A.2d ___ (1995). The defendants argue that the alleged conduct of the defendants, even if taken as true, fails as a matter of law to rise to the level of extreme and outrageous conduct. Instead, the defendants assert that the allegation amounts to nothing more than "a garden variety allegation of improper termination and defamation, which cannot, without more, suffice as the basis for a claim of intentional infliction of emotional distress." Therefore, the defendants argue that since the plaintiff has failed to allege facts sufficient to meet the second element of a cause of action for the intentional infliction of emotional distress, the third count should be stricken.
The plaintiff counters, however, that reasonable minds could differ as to whether the defendants' actions constituted extreme and outrageous conduct. The plaintiff further contends that where reasonable minds could differ on whether the defendants' conduct was extreme and outrageous, the question should be left to the jury. Therefore, the plaintiff argues that the motion to strike the third count should be denied because it is a question for the jury as to whether the defendants' actions amounted to extreme and outrageous conduct.
Extreme and outrageous conduct is "conduct exceeding allbounds usually tolerated by decent society. . . ." (Internal quotation marks omitted.) Petyan v. Ellis, 200 Conn. 243, 254
n. 5, ___ A.2d ___ (1986), quoting Prosser Keeton, Torts (5th Ed.) § 12, p. 60; DeLaurentis v. New Haven, supra, 220 Conn. 267. "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." 1 Restatement (Second), Torts § 46, comment d. "The extreme and outrageous character of the conduct may arise from an abuse by CT Page 5204-V the actor of a position, or a relation with the other, which gives him actual or apparent authority over the other, or power to affect his interests." Id., comment e; see also Prosser 
Keeton, Torts (5th Ed.) § 12, p. 61 (commenting the same). Whether conduct is extreme and outrageous is a question in the first instance for the court; however, where reasonable people may differ, "it is for the jury, subject to the control of the court, to determine whether, in the particular case, the conduct has been sufficiently extreme and outrageous to result in liability." (Internal quotation marks omitted.) Talit v.Peterson, Superior Court, judicial district of Hartford/New Britain at Hartford, Docket No. 543420 (15 Conn.L.Rptr. 166, Sept. 27, 1995, Blue, J.), quoting Brown v. Ellis, 40 Conn. Sup. 165,168, 484 A.2d 944 (Super.Ct. (1984), quoting 1 Restatement (Second), Torts § 46, comment h.
The question in the present case thus boils down to: Was it extreme and outrageous conduct for Ford and Payroll, Watt's former employers, to disseminate defamatory information to other potential employers that were considering hiring Watt? Based upon the relation of employer/employee and the pecuniary interests involved, the court finds that reasonable minds may differ on the answer to the preceding question.
The relationship of employer/employee does not necessarily cease with the termination of the employee's job. Employment applications more often than not request an applicant's employment history, along with the name or names of former supervisors that may be contacted to collect job performance information. Therefore, a former employer maintains a trusted position in relation to the former employee, to convey only truthful information concerning the former employee's job performance. Defaming the former employee, and thus, abusing this trusted relationship, may cause the former employee difficulties in gaining new employment, which may further result in grave financial consequences.
Therefore, since the "extreme and outrageous character of the conduct may arise from an abuse by the actor of a position, or a relation with the other, which gives him actual or apparent authority over the other, or power to affect his interests;" 1 Restatement (Second), Torts § 46, comment e; see also Prosser Keeton, Torts (5th Ed.) § 12, p. 61 (commenting the same); the court finds that in the present case reasonable minds could differ as to whether the defendants' conduct rose to the level of CT Page 5204-W extreme and outrageous conduct. Accordingly, the motion to strike count three is denied.
B. Count Four — CUTPA Violation
CUTPA prohibits any person from engaging "in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." General Statutes §42-110b(b). Under CUTPA, "`[t]rade' or `commerce' means the advertising, the sale or rent or lease, the offering for sale or rent or lease, or the distribution of any services and any property, tangible or intangible, real, personal, or mixed, and any other article, commodity, or thing of value in this state." General Statutes § 42-110a(4).
The defendants argue that the fourth count should be stricken because "it is well established in Connecticut that CUTPA does not reach the employer-employee relationship," citing Quimby v.Kimberly Clark Corp., 28 Conn. App. 660, 670, 613 A.2d 838
(1992). The court finds that the allegations in the fourth count of the revised complaint arise from the employer-employee relationship and even if that is not so, the court finds that the fourth count of the revised complaint does not touch upon trade or commerce. The fourth count is therefore stricken.
LAWRENCE L. HAUSER, JUDGE